IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAUL CRUZ,

        Petitioner,

    v.                                   No. 12-cv-1097 LH/CG
                                            No. 10-cr-1178 LH

UNITED STATES,

        Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Raul Cruz's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody* ("Petition"), filed on October 23, 2012, (CV Doc. 1)[1]; Respondent's *Response to Motion to Vacate, Set Aside or Correct a Sentence by a Person in Federal Custody* ("Response"), filed on November 21, 2012, (CV Doc. 8); and *Petitioner's Reply Brief in Support of Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody* ("Reply"), filed on December 28, 2012, (CV Doc. 12).  On April 11, 2013, the Court held an evidentiary hearing on Petitioner's Motion, after which both parties filed *Proposed Findings and Conclusions.* (CV Docs. 22, 23).

### I.    Factual and Procedural Background

After conducting surveillance of Petitioner's home for three months in 2010, and arranging for a confidential informant to perform a controlled buy of methamphetamine, Agents Villegas and Cunningham of the Middle Rio Grande Valley Drug Task Force obtained a search warrant from the District Court of the State of New Mexico for Petitioner's home.  (CR Doc. 1 at 1-2).  The affidavit in support of the search warrant

---

[1] Documents referenced as "CV Doc. ___" are from case number 12-cv-1097 LH/CG.  Documents referenced "CR Doc. ___" are from case number 10-cr-1178 LH.

was signed by State of New Mexico District Judge Kenneth Martinez on March 26, 2010.  (Evidentiary Hearing "EH" Exhibit B1 at 7).  The search warrant was signed and "dated *nunc pro tunc* on this April 23, 2010 this 26ᵗʰ of March, 2010 at 10:00am" by Judge Martinez.  (CV Doc. 1 at 14).  When the search was performed, on March 29, 2010, the search warrant did not have a signature or date on it.  (EH Exhibit D; CV Doc. 1 at 4).

When Agents Villegas and Cunningham executed the search warrant at Petitioner's home, they found methamphetamine in the pocket of a jacket found in Petitioner's bedroom closet.  (CV Doc. 23 at 2).  After Petitioner told the agents that the drugs belonged to him, the agents released the other two individuals who were also in the home during the search.  (CV Doc. 23 at 2).  Petitioner was arrested and, on April 13, 2010, a criminal complaint was filed, charging him with violating 21 U.S.C. § 841(a).  (CR Doc. 1; CV Doc. 23 at 2).  If convicted of this charge, Petitioner faced a mandatory minimum term of imprisonment of sixty months.  (Hearing Recording "HR" at 53:00[2]).  A superseding indictment filed on September 14, 2010, charged Petitioner with unlawfully, knowingly, and intentionally possessing with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 941(a)(1) and (b)(1)(C); he was also charged with aiding and abetting, in violation of 18 U.S.C. § 2.  (CR Doc. 43).  There was no mandatory minimum on these charges.  (HR at 53:00).

Petitioner's trial began on September 20, 2010.  (CR Doc. 55).  Most of the evidence that the Government presented at trial stemmed from the execution of the search warrant.  (HR at 1:23:40).  The defense did not call any witnesses or introduce

---

[2] All citations to the evidentiary hearing record are to the recording.  The Court will note the approximate time in the recording at which the particular testimony begins.

any exhibits at trial.  (HR at 1:10:00; CR Doc. 55).  After two days of trial, a jury found

Petitioner guilty of possession with intent to distribute methamphetamine.  (CR Docs.

55; 64).  Petitioner was sentenced to a term of sixty-three months imprisonment by

United States District Judge LeRoy Hansen on June 21, 2011.  (CR Doc. 77).

On October 23, 2012, Petitioner filed his Petition, alleging that he received

ineffective assistance of counsel from his trial attorney, Christin Kennedy.  (CV Doc. 1).

Specifically, Petitioner argues that Ms. Kennedy was ineffective because she failed to

file a motion to suppress the evidence discovered from an unauthorized search and

because she failed to properly advise Petitioner as to whether he should plead guilty or

proceed to trial.  (CV Doc. 1; CV Doc. 23).  On April 11, 2013, the Court held an

evidentiary hearing at which both Petitioner and Ms. Kennedy testified.  (CV Doc. 21).

Petitioner was represented by Todd Coberly; Norman Cairns represented the

Government.  (CV Doc. 21).

Ms. Kennedy has practiced law in the area of criminal defense for the entirety of

her ten year career; she is a member of the District of New Mexico's CJA panel and was

appointed to represent Petitioner in April 2010.  (HR at 56:45).  Petitioner first met Ms.

Kennedy in the courtroom when the charges against him were read.  (HR at 13:00).

Ms. Kennedy represented Petitioner throughout the case.  (HR at 13:00).

Ms. Kennedy testified that her notes indicated that she met with Petitioner three

or four times; Petitioner testified that he met Ms. Kennedy once, in June 2010, for

twenty to thirty minutes, when she came to the facility at which he was held.  (HR at

18:09).  Petitioner also testified that he felt that Ms. Kennedy's Spanish was "not very

intelligible," and asked her to bring an interpreter to future meetings.  (HR at 19:17).

3

At Petitioner's detention hearing, Ms. Kennedy received a sheet of paper that listed Petitioner's criminal history.  (HR at 1:00:08).  Petitioner was convicted in Illinois for trafficking cocaine in 1994 and had an outstanding warrant for trafficking methamphetamine in Georgia.  (HR at 1:00:08).  Ms. Kennedy did "some investigation" into the Georgia arrest warrant but ultimately determined that he was no longer wanted in Georgia or that the outstanding warrant was "not as big of a deal as it seemed on paper."  (HR at 1:03:15).  Petitioner testified that Ms. Kennedy told him that the Illinois conviction would not affect anything because it was a misdemeanor that happened twenty years ago.  (HR at 22:30).  Petitioner clarified that Ms. Kennedy was referring to the potential sentence he could face, not to his immigration status as a legal permanent resident.  (HR at 32:10).

Ms. Kennedy discussed with Petitioner his status as a legal permanent resident and how a conviction of the possession with intent to distribute methamphetamine charge would affect that status.  (HR at 45:40).  Petitioner received his permanent residency status on December 1, 1990, according to a sentencing memorandum written by Ms. Kennedy.  (CR Doc. 73 at 7).  When Mr. Coberly asked Ms. Kennedy whether she had discussed Petitioner's 1994 Illinois conviction when she advised him about the immigration consequences, she responded that Petitioner "had been a legal permanent resident for two and a half years; apparently they did not care that he had a conviction . . . they gave him a green card . . . the PSR said two and a half years ago."  (HR at 1:42:45).

Ms. Kennedy testified that Petitioner's priority was preserving his immigration status and because of that, plea negotiations between Mr. Cairns and Ms. Kennedy

4

were not very specific and did not advance very far; no formal plea offer was ever made.  (HR at 1:14:50, 2:01:50).  Petitioner testified that he never told Ms. Kennedy that that he did not want to plead guilty because of the impact it would have on his immigration status, nor was he aware that she had discussed the possibility of a plea with the Government.  (HR at 31:00, 35:30).  He also testified that Ms. Kennedy did not discuss the strength of the Government's case, but told him that there was an 80% - 90% chance that she could win the case.  (HR at 29:10).  When asked whether he would have negotiated a plea to reduce his sentence, even if it resulted in his deportation, Petitioner stated that he would have because he had already confessed that the drugs found in his home were his.  (HR at 36:00).

Ms. Kennedy discussed the federal sentencing guidelines with Petitioner and explained the exposure he was facing.  (HR at 42:45, 48:18).  Ms. Kennedy testified that, on the morning of trial and a few days after the superseding indictment was filed, she explained to Petitioner that the new charges did not have a mandatory minimum prison sentence and that she told him that he could plead guilty or go to trial.  (HR at 1:45:40).  However, Petitioner stated that Ms. Kennedy never explained to him that he could choose whether to plead guilty or go to trial.  (HR at 34:30).

Ms. Kennedy received and reviewed the bulk of discovery in late August 2010; this discovery included a photograph of the search warrant and inventory list that was left at Petitioner's home.  (HR at 1:33:00, 1:39:20).  The photograph of the search warrant shows that it does not contain a signature or a date.  (HR at 1:39:20).  At the hearing, Mr. Coberly showed Ms. Kennedy this photograph and asked if she saw a signature on the warrant; Ms. Kennedy stated that she knew that there was a signature

on the "last page of that warrant," meaning the affidavit in support of the search warrant though it was not visible in the photograph.  (HR at 1:39:30).  Ms. Kennedy "did not see a reason to [file a motion to suppress]."  (HR at 1:25:50).  After reviewing the discovery received in August, Ms. Kennedy focused on issues with the confidential informant and the drug field tests; she filed pre-trial motions relevant to these issues but did not file a motion to suppress based on issues with the confidential informant.  (HR at 1:33:50, 1:35:00).

Ms. Kennedy testified that she felt that there had been a lack of investigation in Petitioner's case and that highlighting that was part of the defense strategy.  (HR at 1:09:00).  Petitioner testified that Ms. Kennedy told him, "If I were in your place, I would take this to a jury;" he also stated that she had told him that she had a few strong arguments for his defense.  (HR at 26:20).  The defense at trial was partly based on attacking the credibility of Detective Villegas, and partly questioning why the other two individuals found in Petitioner's home during the execution of the search warrant were permitted to leave.  (HR at 1:11:20).  Ms. Kennedy filed a motion to disclose the confidential informant because, in her experience, the Government would dismiss the case if forced to reveal the confidential informant's identity.  (HR at 1:52:00).  Ms. Kennedy also submitted a proposed jury instruction that would allow the jury to find the Petitioner guilty of possession of methamphetamine for personal use, a misdemeanor.  (HR at 1:55:20).  A conviction on that charge would have been better for Petitioner's immigration status, he would have faced a smaller prison sentence, and it would have prevented the United States from re-trying him on the felony charge.  (HR at 1:56:40).

## II.    Legal Standard

An individual claiming that his sentence "was imposed in violation of the Constitution or laws of the United Sates" may move a court to vacate, set aside, or correct a sentence by filing a petition under 28 U.S.C. § 2255(a).  To obtain habeas relief under § 2255, the petitioner must demonstrate "an error of constitutional magnitude which had a substantial and injurious effect or influence on the verdict." *United States v. Johnson*, 996 F. Supp. 1259, 1261 (D. Kansas 1998) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).  A court must hold an evidentiary hearing on a § 2255 petition unless the motions, files, and records conclusively show that the prisoner is not entitled to any relief.  28 U.S.C. § 2255(b).

## III.    Analysis

Petitioner has alleged that he was denied effective assistance of counsel because Ms. Kennedy failed to file a motion to suppress the evidence found in his home during an illegal search and that Ms. Kennedy did not properly advise him about the strength of the Government's case against him and the benefits of pleading guilty.  The Government asserts that the Fourth Amendment claim is not meritorious and that Ms. Kennedy properly advised Petitioner regarding pleading guilty or proceeding to trial.

### A.  Law Regarding Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, Petitioner must satisfy a two-part test.  First, Petitioner must show that counsel's performance was deficient because it fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Second, Petitioner must show that counsel's deficient performance prejudiced him.  *Id.* at 687.  To demonstrate that counsel was ineffective, Petitioner

must satisfy both prongs outlined in *Strickland*.  *See id.* at 687.

In establishing that counsel's performance was deficient, "judicial scrutiny of counsel's performance must be highly deferential" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The reasonableness of counsel's performance must be evaluated considering all the circumstances.  *Id.* at 688.  To establish prejudice under the *Strickland* test, Petitioner must show "that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

### B. Trial Counsel's Failure to File a Motion to Suppress

Petitioner argues that he was denied the effective assistance of counsel because Ms. Kennedy failed to file a motion to suppress the evidence collected at Petitioner's home during the execution of an invalid search warrant.  (CV Doc. 12 at 3-7).  When a petitioner's allegation of ineffective assistance of counsel is predicated on a failure to litigate a Fourth Amendment claim, he must prove that "his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).  For this reason, the Court first considers whether Petitioner's Fourth Amendment claim is meritorious.

### i.   Merits of Petitioner's Fourth Amendment Claim

Petitioner claims that because the warrant was not signed or dated, it had not been "issued" by a judge as required by the Fourth Amendment and, therefore, the search was unauthorized.  (CV Doc. 12 at 3).  Petitioner asserts that a motion to suppress the warrant would have been meritorious, despite the fact that the state district

judge signed the warrant *nunc pro tunc*. (CV Doc. 12 at 5-6; CV Doc. 23 at 13-14).  The Government contends that the warrant was valid because warrants may be issued over the telephone, the warrant was signed *nunc pro tunc* and that, even if it were defective, the good faith exception would apply.  (CV Doc. 8 at 3-5; CV Doc. 22 at 5).

Under the Fourth Amendment, "no [w]arrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend IV.  A search warrant must be issued by a neutral and detached magistrate.  *See Johnson v. United States*, 333 U.S. 10, 13-14 (1948).  The judge of a state court of record must "issue the warrant to an officer authorized to execute it."  Fed. R. Crim. P. 41(e)(1).  The warrant must identify the person or property to be searched and seized; designate the judge to whom the warrant must be returned; and command the officer to: "execute the warrant within a specified time no longer than 14 days," execute the warrant during daytime unless otherwise expressly authorized, and return the warrant to the magistrate judge designated in the warrant.  Fed. R. Crim. P. 41(e)(2)(A).

In this case, the search warrant that was presented to Petitioner at the time of the search did not contain the signature of the issuing judge, a date that the warrant was allegedly issued, or any other indication that a judge had approved the warrant.  (Doc. 1 at 12; EH Exhibit D).  The images and copies of the search warrant reveal that the search warrant did not comply with the requirements of Rule 41 of the Federal Rules of Criminal Procedure.  Specifically, the warrant did not comply with the provisions of Rule 41 that require that a judge of a state court must "issue the warrant;" that the warrant must designate the judge to whom the warrant must be returned; and that the warrant

must command the officer to execute the warrant within fourteen days.  Fed. R. Crim. P. 41(e).  On its face, the search warrant does not appear to have been issued prior to the search of Petitioner's home on March 29, 2010.

The Government points out that there is no requirement for a timely signature and that a judge may approve a search warrant over the telephone.  However, while Fed. R. Crim. P. 41(d) does provide that a search warrant may be approved telephonically, Rule 4.1 specifies that "magistrate judges may consider information communicated by telephone" and the Advisory Committee Notes on the 2011 Adoption of the rule specify that "the Rule continues to require, as did former Rule 41(d)(3) and (e)(3), that a federal judge (and not a state judge) handle electronic applications, approvals, and issuances."  Fed. R. Crim. P. Rule 4.1.  The judge who ultimately signed the search warrant *nunc pro tunc* was a state court judge, not a federal magistrate judge, so telephonic approval of the warrant would have been prohibited in this case and cannot provide an explanation for the lack of a timely signature.  Moreover, Rule 4.1 also requires the magistrate judge to sign an original warrant while the applicant prepares a duplicate original.  Fed. R. Crim. P. 4.1(b)(3).  The Government has not filed a duplicate original, or even alleged that the applicant for the search warrant created one.

The Petitioner argues that the facts in this case are indistinguishable from those in *United States v. Evans*, 489 F. Supp. 2d 893 (D. Mont. 2007), where the Court found that an unsigned search warrant was not valid and suppressed the evidence found pursuant to the execution of that warrant.  *Id.* at 895 ("An unsigned warrant . . . is not a warrant within the meaning of the Fourth Amendment").  In *Evans*, a federal magistrate

judge signed the search warrant application and affidavit, but the search warrant itself contained no date or signature indicating that it had been issued.  *Id.* at 897-98. Additionally, the magistrate judge testified that his practice was to only sign the application and affidavit when he intended to issue the search warrant.  *Id.* at 898.  In *Evans,* the court rejected the Government's argument that the judge's intent to issue the warrant was enough to uphold the validity of the warrant because "[the right to privacy] is too precious to entrust to after-the-fact conjecture about a magistrate's intentions."  *Id.* at 898-99.

The Court is persuaded by the reasoning in *Evans.*  A judge's *nunc pro tunc* signature of a search warrant is not substantively different from a judge's testimony that he intended to issue the warrant prior to the search.  In this case, the search warrant was signed *nunc pro tunc* almost a month after the search took place and, although the belated signature does present evidence that the judge intended to issue the warrant on March 26, 2010, the fact is that the warrant that the agents showed Petitioner while gaining access to his home had no signature, date, or temporary case number to indicate that it had been issued.   A *nunc pro tunc* order may correct a clerical error, but is not used "to make substantive changes affecting a party's rights."  *United States v. Suarez-Perez*, 484 F.3d 537, 541 (8th Cir. 2007).  In this case, the warrant was not validly issued prior to March 29, 2010, and it would be rewriting history to suggest that the addition of the signature on April 23, 2010, allowed that warrant to issue.  The failure to properly issue a search warrant is not a mere clerical error that can be corrected by signing the search warrant almost a month after the search has taken place.

The Government also argues that the *Leon* good faith exception is pertinent

here, and the evidence would not have been suppressed.  (CV Doc. 8 at 4).  However, the exception does not apply when "a warrant is so facially deficient that the executing officer could not reasonably believe it was valid."  *United States v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000) (citing *United States v. Leon*, 468 U.S. 897, 923 (1984)). The Government's only argument that the officers were acting in good faith is that the lack of a signature or date was merely a clerical error.  (CV Doc. 8 at 4-5).  As discussed above, the failure to provide any indication on the face of the search warrant that it was issued is not a mere clerical error.  Moreover, the Court finds that reliance on an unsigned, undated warrant is not objectively reasonable.  In *Groh v. Ramirez*, 540 U.S. 551 (2004), the Supreme Court found that reliance on a search warrant that did not particularly describe the items to be seized was not objectively reasonable.  *Id.* at 563-65.  As the Court wrote, "even a cursory reading of the warrant in this case – perhaps just a simple glance – would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal."  *Id.* at 564.  A quick glance at the search warrant in this case would allow an officer to immediately ascertain that there was no signature on the warrant.  Arguably, the failure to demonstrate that a judge has approved the search is even more disconcerting to an individual whose property is being searched than a mistake in the description of the property that was approved by a judge.  Petitioner has raised a meritorious Fourth Amendment claim.

> ii.   *Whether Trial Counsel's Failure to File a Motion to Suppress Rendered Her Performance Deficient*

Even when a petitioner has shown that he has a meritorious Fourth Amendment claim, he must still prove under *Strickland* that he was denied a fair trial by the gross incompetence of his attorney.  *United States v. Owens*, 882 F.2d 1493, 1501 (10th Cir.

1989).  Thus, the Court must consider whether Petitioner has shown that Ms. Kennedy's performance was deficient.

Petitioner alleges that Ms. Kennedy's failure to file a motion to suppress has no possible strategic merit.  (CV Doc. 23 at 15).  The Government suggests that Ms. Kennedy's trial strategy was to challenge the sufficiency of the evidence, that this strategy was reasonable, and that Petitioner has not shown that Ms. Kennedy's performance was deficient.  (CV Doc. 22 at 4-5).

As mentioned above, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88.  In applying this standard, a court gives considerable deference to an attorney's strategic decisions and the attorney "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of professional judgment."  *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690).  The "overriding question under the first prong of Strickland is whether, under all the circumstances, counsel performed in an objectively unreasonable manner."  *Id.* at 1046.

At the evidentiary hearing, Ms. Kennedy testified that that she "did not see that there was a reason" to file a motion to suppress.  (HR at 1:26:00).  Overall, the Court found Ms. Kennedy to be defensive in her testimony, and she generally provided evasive answers when questioned.  For example, when Mr. Coberly showed Ms. Kennedy a photograph of the search warrant and the inventory list that she received as part of discover in August 2010, Ms. Kennedy refused to provide direct answers:

Coberly:    Do you see a signature on the warrant?
Kennedy:    I know I have a copy of it

13

> Coberly:        Do you see a signature on this warrant?
> Kennedy:       There is a signature on the last page of that warrant.

(HR at 1:39:20).  The last page of the warrant that Ms. Kennedy was referring to was

not in the photograph and was actually the affidavit in support of the search warrant.

Importantly, Ms. Kennedy provided no explanation as to why she did not see a reason

to file a motion to suppress when the warrant had no signature, date, or other indication

that it had been issued.

In this case, most of the evidence at trial that supported the charges against

Petitioner – the drugs found in his home, the testimony of the investigating officers, and

Petitioner's acknowledgement that the drugs were his – were a result of the search

warrant.  The Court cannot conceive of a strategic reason why Ms. Kennedy would have

chosen not to file a motion to suppress that evidence.

Ms. Kennedy testified that she filed a motion to disclose the identity of the

confidential informant because, in her experience, the Government would dismiss the

case if forced to disclose the informant's identity.  This motion was denied on

September 15, 2010, a few days before trial began.  (CR Doc. 46).   With the denial of

this motion, the Government was highly unlikely to dismiss the case.  Thus, Ms.

Kennedy knew that Petitioner would proceed to trial and the Government would present

evidence of drugs found in his home and Petitioner's admission that the drugs were his.

During her testimony, Ms. Kennedy failed to provide any explanation for why she did not

file a motion to suppress this evidence in addition to her other motions.

Under *Strickland*, the Court must consider whether, under all of the

circumstances, Ms. Kennedy performed in an objectively unreasonable manner.

Although Ms. Kennedy filed a motion to disclose the confidential informant, opposed the

introduction of some of the Government's evidence, and moved to include a jury instruction on the lesser-included offense of possession, her failure to, at the very least, research the merits of filing a motion to suppress the evidence found while executing an unsigned, undated search warrant is objectively unreasonable.

  iii.  Whether Petitioner Was Prejudiced by Trial Counsel's Deficient Performance

Petitioner argues that he was prejudiced by Ms. Kennedy's failure to file a motion to suppress because the Government relied on evidence seized during the March 29, 2010, search in order to prove the element of possession at trial. (CV Doc. 23 at 15-16). The Government does not specifically address this argument in any of its briefs, providing only the arguments that the Fourth Amendment claim does not have merit and that Petitioner has failed to show that Ms. Kennedy was ineffective. (*See generally*, CV Docs. 8, 22).

To establish prejudice under the *Strickland* test, a petitioner must show "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. When the claim of ineffective assistance of counsel involves a Fourth Amendment claim, the petitioner must show that there is a reasonable probability that the outcome would have been different without the suppressed evidence. *Kimmelman*, 477 U.S. 365, 375 (1986).

In this case, the Government's case against Petitioner at trial involved testimony from the investigating officers regarding the controlled buys and evidence stemming from the search of Petitioner's home. If the evidence from the search had been suppressed, the Government would not have had evidence that Petitioner possessed drugs and, therefore, would not have been able to meet its burden. For this reason, the

Court finds that Petitioner was prejudiced by Ms. Kennedy's failure to file a motion to suppress the evidence found during a search executed pursuant to an invalid search warrant.

### C. Trial Counsel's Failure to Properly Advise Petitioner on Merits of Pleading Guilty

Petitioner claims that Ms. Kennedy failed to provide accurate advice regarding the consequences of pleading guilty or proceeding to trial. (CV Doc. 12 at 7-10; CV Doc. 23 at 16-19). Specifically, Petitioner asserts that Ms. Kennedy's emphasis on going to trial in order to preserve his immigration status was misguided because his 1994 conviction made him eligible for deportation regardless of whether he was convicted in this case. (CV Doc. 12 at 7, 9; CV Doc. 23 at 17). Petitioner also claims that Ms. Kennedy failed to explain the significance of the superseding indictment filed shortly before trial. (CV Doc. 23 at 17-18). The Government contends, with little discussion of the relevant legal authority, that Ms. Kennedy was not ineffective because there was no plea offer to convey to Petitioner and that she adequately informed Petitioner of his options regarding a plea agreement, the immigration consequences of a conviction, and the potential outcomes of a trial. (CV Doc. 22 at 3).

The two-part test described in *Strickland* applies to claims of ineffective assistance of counsel in the context of guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). As the Supreme Court has written, "plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical states." *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012). The Court

must first consider whether Ms. Kennedy's performance was deficient and, if so, whether Petitioner was prejudiced because of Ms. Kennedy's deficient performance.

> i.     *Whether Trial Counsel's Advice Regarding Pleading Guilty Rendered Her Performance Deficient*

As mentioned above, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.  In applying this standard, a court gives considerable deference to an attorney's strategic decisions and the attorney "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *Bullock*, 297 F.3d at 1044 (quoting *Strickland*, 466 U.S. at 690).  The presumption that "strategic choices made after thorough investigation of law and facts relevant to plausible options [is] virtually unchallengeable." *Id.* at 1047.  An attorney's ignorance of the relevant law and facts may prevent a court from characterizing his or her actions as strategic, thus the "pertinent question under the first prong of *Strickland* remains whether, after considering all the circumstances of the case, the attorney's representation was objectively unreasonable." *Id.* at 1050-51.

At the evidentiary hearing, Ms. Kennedy testified that Petitioner's priority was to maintain his immigration status and, for that reason, she did not seek a plea offer from the Government.  (HR at 2:01:00).  A conviction for possession with intent to distribute methamphetamine would most certainly jeopardize Petitioner's status as a legal permanent resident and Ms. Kennedy was correct to explain that to Petitioner, as she was required to under *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010) (holding that the failure to advise a client about an issue like deportation in the context of a plea

agreement "clearly satisfies the first prong of the *Strickland* analysis").  However,

Petitioner had a 1994 Illinois conviction for trafficking cocaine, a conviction that also

made him eligible for deportation.[3]

Ms. Kennedy's testimony regarding Petitioner's 1994 conviction was confusing.

When asked whether she knew about the conviction, she stated only that she found out

about it at Petitioner's detention hearing and knew "only what was on the paper."  (HR

at 1:00:00).  Although she stated that she investigated the Georgia warrant, it appears

that she did not look into Petitioner's 1994 conviction and the impact that it could have

on his immigration status.  The following exchange occurred between Mr. Coberly and

Ms. Kennedy regarding Petitioner's 1994 conviction:

| | |
|---|---|
| Coberly: | You are not an expert in immigration law, are you? |
| Kennedy: | No, but I have a mother who practices immigration law and has for twenty-five years. |
| Coberly: | When you advised Cruz on immigration consequences, did you talk to him about his conviction in Illinois? |
| Kennedy: | He had been a legal permanent resident for two and a half years, apparently they did not care that he had a conviction . . . . They gave him a green card . . . the PSR said two and half years ago. |

. . .

| | |
|---|---|
| Coberly: | Did you advise on the immigration consequences? |
| Kennedy: | Absolutely . . . automatically, it is my job to try to protect his residency . . . I told him "you can take a plea but you will lose your legal permanent residency with that conviction, or you can go to trial . . . and try to protect that legal permanent residency and it is your choice" |

(HR at 1:42:45).  Ms. Kennedy's statement that Petitioner received his green card after

his 1994 conviction is not accurate, as Petitioner received his permanent residency

---

[3] Under 8 U.S.C. § 1227(a)(2)(B)(i), "any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . is deportable."

status on December 1, 1990, a fact contained in the sentencing memorandum written by Ms. Kennedy.  (CR Doc. 73 at 7).  It is possible that Ms. Kennedy had simply forgotten some of the details of Petitioner's case – the evidentiary hearing was held almost two years after Petitioner's sentencing.  However, Ms. Kennedy's failure to answer Mr. Coberly's questions with direct, comprehensive answers leaves the Court with questions as to whether Ms. Kennedy did any research into Petitioner's 1994 conviction and its impact on his immigration status.

This is significant in light of Ms. Kennedy's statement that she did not seek a plea offer because Petitioner wanted to protect his immigration status.  Ms. Kennedy's failure to research whether Petitioner was already eligible for deportation, even if found not guilty of possession with intent to distribute methamphetamine, means that she failed to accurately advise him regarding the consequences of pleading guilty or proceeding to trial.

Ms. Kennedy testified that it was Petitioner's choice to go to trial and that she felt a good strategy at trial was to attack the credibility of the Government's witnesses and point out that there had been a "lack of investigation."  (HR at 1:09:00).  While she may have correctly assessed that she could put forth some strong arguments in her defense of Petitioner, there is no indication that she conveyed to Petitioner that the Government had a very strong case, which included Petitioner's admission that the drugs found in his home were his, evidence of other materials used to manufacture methamphetamine, and testimony from the investigating agents.  Although Ms. Kennedy did file a motion to disclose the confidential informant's identity in an attempt to force the Government to dismiss the case, this motion was unsuccessful.  (*See* CR Doc. 46).  Considering all of

the circumstances, including Ms. Kennedy's failure to file a motion to suppress, her failure to inform Petitioner that the Government had a very strong case, her failure to advise Petitioner that he was eligible for deportation because of his 1994 conviction, and her failure to seek a plea offer, Ms. Kennedy's actions were objectively unreasonable and rendered her performance deficient.

    *ii.* *Whether Petitioner Was Prejudiced by Trial Counsel's Deficient Performance*

   In order to show he was prejudiced by his trial counsel's deficient performance, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

   At the evidentiary hearing, Petitioner testified that he would have taken a plea agreement if he had known that the Government had a strong case and that pleading guilty could have reduced his sentence, even if he would have been deported.  (HR at 36:44).  An individual convicted of a violation of 21 U.S.C. § 841(a) faces a mandatory minimum term of imprisonment of sixty months, however, when the superseding indictment was filed, the new charges did not carry a mandatory minimum term of imprisonment.  Petitioner was sentenced to a term of imprisonment of 63 months.  (CR Doc. 77).  Ms. Kennedy's failure to pursue a plea agreement under the first indictment may not have prejudiced Petitioner.  However, her failure to adequately explain that a guilty plea under the superseding indictment may have resulted in a shorter term of imprisonment – and that he was eligible for deportation whether he entered a guilty plea or proceeded to trial – did prejudice Petitioner.  The Supreme Court has written that "any amount of actual jail time has Sixth Amendment significance."  *Glover v. United*

*States*, 531 U.S. 198, 203 (2001).  Therefore, Ms. Kennedy's failure to adequately and correctly explain to Petitioner the consequences of pleading guilty or proceeding to trial deprived Petitioner of an opportunity to plead guilty to a shorter prison term.  Thus, MS. Kennedy's deficient performance prejudiced Petitioner in violation of his Sixth Amendment rights.

## IV.    Recommendation

For the reasons discussed above, the Court finds that Petitioner was denied effective assistance of counsel in violation of his Sixth Amendment rights both because Ms. Kennedy failed to file a motion to suppress and because she did not properly advise him of the benefits of pleading guilty.  Either of the grounds Petitioner has raised is enough to support vacating his conviction, but considering all of the circumstances in his case, the Court has no doubt that Petitioner's Sixth Amendment right to effective assistance of counsel was violated.  Therefore, the Court **RECOMMENDS** that Petitioner Raul Cruz's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody*, (CV Doc. 1), be **GRANTED** and his conviction be **VACATED**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE